ORRIN R. STEDMAN, ADMINISTRATOR, *vs.* EUGENE O'NEIL.

Second Judicial District, Norwich, April Term, 1909.
BALDWIN, C. J., HALL, PRENTICE, THAYER and RORABACK, Js.

Having explicitly told the jury that the plaintiff assumed the burden of proving all the controverted questions in the case, among which was his own freedom from negligence contributing to the injury, the trial judge is not called upon to repeat that principle in connection with every aspect of the case.

Statements of fact made in judicial opinions during a course of reasoning to conclusions, are rarely adapted to guide a jury in their deliberations. Oftentimes they tend only to bewilder and confuse, especially if the language is wrested from its context and made to perform an office never intended for it. What the jury is concerned with is the principle of law established by the opinion, and it is enough if that be correctly stated and applied to the situation in hand.

Where there is nothing in the evidence to suggest a want of ordinary prudence upon the part of the plaintiff in the use of the horse driven by him, or any circumstance which ought to have put him upon inquiry as to its character, the trial court may well refuse instructions stating what the legal effect would be of a failure of a plaintiff to make inquiries, or to use reasonable care in investigating, as to the character of a horse driven by him, which the jury might find was vicious.

Negligence is the failure to exercise that degree of care under given circumstances which a person of ordinary prudence would exercise under similar circumstances.

Only those circumstances which are known to the actor are to be considered in applying this standard to his conduct; but his negligent ignorance is regarded as the equivalent of knowledge, and what in the exercise of ordinary care he would have discovered is to be imputed to him as known.

One who has no knowledge, actual or implied, that a horse used by him is not one of ordinary gentleness, cannot be negligent either in using it, or in not observing precautions while using it which would have been requisite had he occasion to anticipate a more hazardous situation.

Where two causes combine to produce injuries, a defendant is not relieved from liability because he is responsible for only one of them.

Whether a father's negligence is imputable to his daughter, who was driving with him at the time of her injury, *quære.* A charge that it was, is favorable to the defendant, and cannot be complained of by him.

Argued April 28th—decided May 25th, 1909.

ACTION to recover damages for negligently causing the death of the plaintiff's intestate, brought to the Superior Court in New London County and tried to the jury before *Curtis, J.;* verdict and judgment for the plaintiff for $500, and appeal by the defendant. *No error.*

The defendant's servant, while engaged in his service as the driver of a team which was loaded with fresh cut granite blocks two or three feet in length and nine or ten inches in width and thickness, reached the foot of a hill in the village of Pawcatuck. Desiring to lighten his load for the ascent, he unloaded three of the stones and placed them in the traveled roadway near the foot of the hill. They were so placed that they formed a pile two feet or more high, one

stone projecting over the others toward the middle of the road. He then proceeded on his way. Later the plaintiff came down the hill in a single-seat buggy, driving a horse owned by one Cowles. There were with him in the buggy his two grown-up daughters, whom, for purposes of the deceased, he was carrying to the village from his and their home. The three were seated upon the single seat, the plaintiff being upon the right side and driving. Near the pile of stones the horse became frightened and ran away, with the result that one of the daughters, the plaintiff's intestate, was thrown out and killed. The plaintiff offered evidence to prove that the stones were the cause of the horse's fright. The defendant claimed that it was running and unmanageable before it reached the stones. Cowles, the owner of the horse, had been a boarder at the Stedman's for several months before the accident. During all this time he had owned the horse, and it had been kept in Mr. Stedman's barn where it had been under the observation of the Stedman family. They offered evidence to prove that they had frequently seen it driven by others; that Mr. Stedman had himself driven it upon several occasions, as had also his son; that during all this time it appeared to be and acted as a horse of ordinary gentleness, perfectly tractable and safe for ordinary persons to drive; that both Mr. Stedman and his daughters believed and understood that it was ordinarily gentle and safe to drive, and that such was its character in fact. The defendant offered evidence to show that the horse, before its purchase by Cowles, had a habit of attempting to run away upon slight provocation; that it had on several occasions prior to said purchase run away, and that it was a dangerous and unreliable animal. There was no evidence in the case of any runaway habit or of any intractable or dangerous disposition or trait being shown while Cowles owned it, or that it then had such habit, disposition, or trait, except by inference from the evidence of its prior conduct, or that either Cowles or the Stedmans had

any knowledge of the existence of such habit, disposition, or trait at any time prior to the Cowles ownership or after it. The defendant offered evidence to show that the plaintiff was at the time carelessly driving the horse with one hand, and had his other hand in a position so that it could not be effectively used, and that he was driving rapidly. This the witnesses for the plaintiff denied. The defendant claimed to have established that his servant was not negligent, that the plaintiff and his intestate were, and that the unruly disposition of the horse was the proximate cause of the injury complained of.

*Hadlai A. Hull* and *Richard P. Freeman*, for the appellant (defendant).

*Jeremiah J. Desmond*, for the appellee (plaintiff).

PRENTICE, J. The defendant objects to the charge, upon the ground that it did not sufficiently impress upon the minds of the jury the fact that the plaintiff was bound to establish freedom from negligence on the part of himself and his intestate. By this statement it is not intended to complain of the court's instructions upon the subject of imputed negligence. The court went to the full extent of the defendant's requests in this regard, and told the jury that the contributory negligence of either the plaintiff, who was driving the horse, or his intestate, would bar recovery. Whether this instruction was right or wrong, it was what was asked by the defendant, and favorable to him. The burden of the objection is that the jury were not clearly informed that the burden was upon the plaintiff to establish the absence of contributory negligence. This objection is not well founded. The jury were explicitly told that the plaintiff, in order to recover, must establish all the controverted or disputed matters by a fair preponderance of the evidence, and the matter of contributory negligence was enumerated as one of

those in controversy, and, as such, dwelt upon at length. It was unnecessary to repeat this principle in connection with every aspect of the case.

The charge, in so far as it related to the question of the defendant's negligence, has elicited but one criticism. That arises from the court's failure to say to the jury, as requested, that in determining the question of the defendant's negligence it should take into consideration the ordinary experiences of men, the conditions of highways, and that the ordinary highways of the State have in them many objects which, in the language of this court, are more or less calculated to frighten animals.

The court pursued the only proper course. It gave clear and correct instructions as to the principles of law governing the situation presented, and pointed out the considerations which should be controlling in determining whether a nuisance had been created in the highway, and whether the defendant's servant, acting within the scope of his employment by the defendant, had been negligent in creating it. The language of the request, borrowed in substance from discussions contained in judicial opinions, was, like a large part of such discussions, unsuitable to be addressed to juries for their guidance. They are intended for the information of the legal profession. They form a part of a course of reasoning to a conclusion. The reasoning may be of interest to the profession, but it is the principle of law evolved which should be given to juries for their guidance. Academic discussions and considerations, however apt and correct they may be, can accomplish little else than to bewilder and confuse the average jury. When, as here, the language of discussion is wrested from its context and made to perform an office never intended for it, there is the added danger that it will mislead. That is emphatically the situation here. The statement attempted to be summarized in a portion of the request was appropriately made in its connection in a discussion of a question of fact. It is not the

correct statement of a principle of law for the guidance of a jury.

In respect to the conduct of the plaintiff and his intestate as affecting the right of recovery, the court, in connection with the controverted question as to whether or not the horse was one of ordinary gentleness, said to the jury, among other things, that if they found that it was not one of ordinary gentleness, but had the vicious habit of becoming easily frightened and running away, as claimed by the defendant, the plaintiff would not be affected by that fact unless he or his decedent had knowledge of it. No complaint is made of the charge as bearing upon a situation where the occupants of the wagon had knowledge that the horse was not one of ordinary gentleness. The objection which is urged is that the court, in the passage just recited, wrongfully deprived the defendant of the benefit of claims which, in the brief of counsel, are summarized, in substance, as follows:—

(1) That if the horse was vicious, and that viciousness contributed to the injury complained of, the plaintiff and his decedent were bound to know it, and could not, therefore, recover.

(2) That if the horse was vicious, the plaintiff and his decedent were bound to use a degree of care and caution commensurate with that viciousness or adequate to control it, and that, failing to do so, there could be no recovery if the viciousness contributed to produce the injury to the decedent.

(3) That it was the duty of the plaintiff and his decedent to exercise reasonable care to ascertain the character of the horse which was being used, and that if they failed to do so, and it was vicious, and that viciousness contributed to the injury complained of, then there could be no recovery.

This statement of claims, of which the defendant conceives that he was wrongfully deprived, involves several

independent propositions. One is that it was the duty of the plaintiff and his intestate to exercise reasonable care to acquaint themselves with the character of the horse, that failure to do so would be negligence on their part, and that any ignorance of vicious proclivities in it contributing to the accident which resulted from such failure, would not serve as an excuse for a failure to observe that degree of care and caution in its management and control upon the road which the existence in it of those proclivities reasonably demanded. No claim of this character was included among the numerous ones made below, and the situation before the jury upon the evidence was not one which called for such instructions, or any instructions bearing upon a failure on the part of the plaintiff or the deceased to use due care in attempting to ascertain the character of the horse, or upon the effect of knowledge which the plaintiff and the intestate reasonably ought to have had, but did not in fact have, as a factor in determining the degree of prudence characterizing their conduct. There was nothing in the evidence presented by either party which furnished even a plausible basis for a suggestion that the dictates of common prudence had not been followed in investigations preliminary to the use of the horse, or that there were circumstances which put the parties who rode behind it upon inquiry as to its character, or ought to have created a suspicion in their minds that its character was a questionable one. Under such circumstances it would have been improper for the court to submit such matters to the jury, or to instruct them concerning questions which could not reasonably enter into their deliberations.

There is also involved the proposition that the failure to use a degree of care and caution commensurate with the viciousness of the horse, or adequate to its control, would amount to negligence on the part of the occupants of the wagon, although that vicious propensity neither was known nor ought to have been known to them. Negligence con-

sists in the failure to exercise that degree of care under given circumstances which a person of ordinary prudence would exercise under similar circumstances. It is not what one does, considered of itself and apart from all other considerations, which is to be judged in determining whether there has been an exercise of ordinary care. It is to what he does as related to the circumstances under which he acts that the test is to be applied. The circumstances which thus enter into the problem presented in any given case are necessarily those which are known to the actor, either actually or impliedly. Otherwise the rule would be shorn of all its fairness. Men cannot be expected to govern their actions by what to them lies in the realm of the unknown. Their actions cannot be compared to that of others—to that of the ordinarily prudent man—in respect to the degree of prudence exhibited therein, except upon the common basis of a common knowledge as to the surrounding and attending circumstances, actual or constructive. In this way only can the circumstances be made similar, and the specific man be brought under the same circumstances and conditions as the typical ordinarily prudent one who supplies the standard of comparison. In determining the boundaries of the realm of the unknown, however, negligent ignorance is regarded as the equivalent of knowledge, and what one in the exercise of ordinary care would have discovered, is to be imputed to him as known. *Lowndes* v. *City National Bank*, *ante*, p. 8, 72 Atl. 150. So in this case, the plaintiff and his intestate, having no knowledge, actual or implied, that the horse was not one of ordinary gentleness, could not be negligent either in using it, or in not observing precautions while using it which would have been requisite had they had occasion to anticipate a more hazardous situation.

Still another and entirely different proposition is presented by these claims of the defendant. They embody the assertion that he was entitled to an instruction that if the horse was an unruly and vicious one, and that unruly and

vicious disposition contributed to the injury complained of, the plaintiff, for that reason alone and regardless of all other considerations, could not recover.

In this claim there is no appeal to the doctrine of contributory negligence. The appeal is to an assumed doctrine respecting liability for negligent acts where there are concurrent causes of injury. The verdict, when examined in the light of the charge, discloses that the jury must have found that the pile of stones was calculated to frighten a horse of ordinary gentleness, and therefore a public nuisance; that the defendant, through his servant, acting within the scope of his employment, had created the nuisance, and that its existence was an efficient cause of the injury to the intestate. It follows as a corollary of these conclusions that a result such as led to the intestate's death was one to have been anticipated by the author of the nuisance. The law governing such conditions is well settled. Negligence, in order to render one liable, need not be the sole cause of an injury. Where two causes combine to produce injuries, one is not relieved from liability because he is responsible for only one of them. The negligence of two or more persons may concur, and each be liable. Here, that which it is claimed concurred with the defendant's negligence in producing the injury in question was the circumstance that the horse was easily frightened and given to running away. "Where the negligence of a person concurs with some ordinary cause, and the conjunction produces an effect injurious to some other person, it is manifest . . . that the operation of such ordinary cause . . . will not excuse . . . liability for the whole of the joint effect." 1 Beven on Negligence in Law (3d Ed.) 81. "If the plaintiff is in the exercise of ordinary care and prudence, and the injury is attributable to the negligence of the defendant, combined with some accidental cause, to which the plaintiff has not negligently contributed, the defendant is liable." *Baldwin* v. *Greenwoods Turnpike Co.*, 40 Conn.

238, 244; *Ashborn* v. *Waterbury*, 70 id. 551, 555, 40 Atl. 458. The concurrence of a third person's negligent act will not absolve one from liability for consequences of which the latter's failure to exercise reasonable care was an efficient cause. *Farrell* v. *Eastern Machinery Co.*, 77 Conn. 484, 492, 59 Atl. 611. The fact that a person, injured by the negligence of a town in the matter of highway repair, was at the time driving a vicious horse, will not bar recovery, in the absence of proof of his negligence in driving it. *Daniels* v. *Saybrook*, 34 Conn. 377, 383. Counsel for the defendant have referred us to a few cases, all but one in a single jurisdiction, which seem to hold that the driver of a vicious horse, whose viciousness contributes to cause an injury to its driver, cannot recover for that injury against another who, by his wrongdoing, was an efficient cause of the injury, however free from personal blame the driver may have been. Such a relief from responsibility to the only wrongdoer, and such an imposition of the burden resulting from wrongdoing upon the one who is without fault in the premises, is not countenanced by the authorities generally, nor, as we have seen, by the established rule in this State, and is not justified by reason.

There is no error.

In this opinion the other judges concurred.